*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2144**

Ross Arneson,
Respondent,

vs.

Blue Earth County Board of Commissioners,
Appellant.

**Filed August 11, 2014
Affirmed
Klaphake, Judge**[*]

Blue Earth County District Court
File Nos. 07-CV-12-4325; 07-CV-13-66

Kenneth R. White, Law Office of Kenneth R. White, P.C., Mankato, Minnesota; and

Christopher Rovney, Assistant Blue Earth County Attorney, Mankato, Minnesota (for respondent)

Scott M. Lepak, Karen K. Kurth, Barna, Guzy & Steffen, Ltd., Minneapolis, Minnesota (for appellant)

Teresa L. Joppa, AFSCME Council 65, Moorhead, Minnesota (for amicus curiae)

        Considered and decided by Bjorkman, Presiding Judge; Smith, Judge; and

Klaphake, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

Appellant Blue Earth County Board of Commissioners (the Board) challenges the district court's conclusion that the Board must reconsider the 2012 salaries of the assistant county attorneys because it acted arbitrarily and unreasonably when it set those salaries. The Board argues that the district court erred by allowing respondent Blue Earth County Attorney Ross Arneson's appeal of the 2012 county attorney budget to proceed and by concluding that the Board arbitrarily set the salaries for the assistant county attorneys even though it adopted a binding arbitration award. We affirm.

## DECISION

The Board raises three primary arguments on appeal: that Arneson's appeal was untimely, that Arneson failed to make a threshold showing that the Board's salary decision was arbitrary or unreasonable, and that the district court incorrectly concluded that the Board had acted arbitrarily and unreasonably. We address each argument in turn.

*Timeliness of 2012 Appeal*

The Board first argues that Arneson's appeal of the 2012 budget was untimely because it did not meet the requirements of Minn. Stat. § 388.18, subd. 6 (2012). We review the district court's interpretation of a statute de novo. *Goldman v. Greenwood*, 748 N.W.2d 279, 282 (Minn. 2008).

A county board must "set by resolution" the county attorney's salary and provide a budget for the county attorney's office, including assistant county attorney salaries. Minn. Stat. § 388.18, subds. 2, 5 (2012). A county attorney may directly appeal to the

district court any Board resolution dealing with his or her salary or the office budget upon belief that the Board's decision was "arbitrary, capricious, oppressive, or in unreasonable disregard for the responsibilities and duties of [the] office, and the county attorney's experience, qualifications, and performance." *Id.*, subd. 6. But the county attorney must file an appeal within 15 days of the Board's "resolution setting such salary or budget." *Id.*

A county attorney also has the right to engage in exclusive, organized labor negotiations with the county. Minn. Stat. §§ 179A.06, subd. 2, 179A.07, subd. 4 (2012). We have held that these statutes coexist in a manner that gives the county attorney two opportunities to engage in salary negotiations. *See In re Appeal of Crow Wing Cnty. Attorney*, 552 N.W.2d 278, 280 (Minn. App. 1996) (applying same rule to negotiation of assistant county attorney salaries), *review denied* (Minn. Oct. 29, 2006).

As required by law, the Board adopted a budget resolution on December 20, 2011, setting the 2012 budget. At the same time, the assistant county attorneys, who had formed a collective bargaining unit, were engaged in salary negotiations, followed by binding arbitration, with the Board. An arbitrator issued a determination in September 2012, affirming the Board's position, and the Board approved a resolution setting salaries in accordance with the arbitration award on November 20, 2012.

The Board argues that Arneson's appeal, filed on November 20, 2012, was untimely, because it was filed more than 15 days after the Board's initial budget resolution in December 2011, and therefore the district court erred by refusing to dismiss the appeal. The Board contends that the 2011 resolution finalized the budget as a matter

3

of law, and that Arneson could have appealed the 2011 budget resolution despite the ongoing negotiations. We disagree.

In a sense, the Board is correct: it is possible that a budget appeal can be heard and resolved by a district court without disrupting or negatively affecting salary negotiations. And, as the Board suggests, the district court could stay proceedings pending resolution of the negotiations. But Arneson correctly notes that the district court cannot fix employee salaries even if it finds that the Board's decision was arbitrary. *In re Mille Lacs Cnty. Attorney Salary and Budget for 1987*, 422 N.W.2d 291, 295 (Minn. App. 1988), *review dismissed* (Minn. June 22, 1988). It must refer the matter to the Board for further consideration instead. *Id.*

The Board nonetheless asserts that the budget became final after the December 2011 resolution because the county had to establish a binding, final budget no more than five working days after December 20 of the preceding year. *See* Minn. Stat. §§ 275.065, subd. 1 (deadline for adopting proposed budget and tax levy), 275.07, subd. 1(a) (2012) (deadline for certifying proposed tax levy). But the taxation statutes on which this argument relies specify that the Board must nonetheless "meet and negotiate over employment compensation" as required by the provisions of the Public Employment Labor Relations Act. Minn. Stat. § 275.065, subd. 6(c) (2012). We note that despite the Board's 2011 budget resolution, the raises provided for in the resolution and affirmed by the arbitrator did not become effective until the Board adopted the arbitration award in November 2012.

Because we agree that the budget was not final until the Board implemented the arbitration award, Arneson's appeal falls within the 15-day statutory limit. Thus, the district court did not err by concluding that Arneson's 2012 budget appeal was timely and denying the Board's motion to dismiss.

*Preliminary Showing of Unreasonableness*

The Board next contends that the district court erred because it did not require Arneson to make a preliminary showing that the Board's salary decision was arbitrary or unreasonable. A county attorney's right to appeal a county board's budget or salary resolution is governed by Minn. Stat. § 388.18, subd. 6. We review the district court's interpretation of a statute de novo. *Goldman*, 748 N.W.2d at 282.

A county attorney may challenge the salary or budget decisions of a county board on the grounds that the board's decision "in setting such salary or budget was arbitrary, capricious, oppressive, or in unreasonable disregard for the responsibilities and duties of said office, and the county attorney's experience, qualifications, and performance." Minn. Stat. § 388.18, subd. 6; *see Amdahl v. County of Fillmore*, 258 N.W.2d 869, 876 (Minn. 1977) (discussing salary challenges by county officials). By the plain language of the statute, no preliminary showing is required. *See* Minn. Stat. § 645.16 (2012) (stating that where statutory language is clear and unambiguous, a court may not disregard the letter of the law). The Board's reliance on *Stensland v. Faribault Cnty.*, 365 N.W.2d 224, 229 (Minn. 1985) is misplaced. The *Stensland* court concluded that a board must demonstrate it had more than a summary knowledge of an official's responsibilities and

5

duties in order to overcome a charge of unreasonableness; it did not create an additional procedural hurdle in the process.

*Arbitrariness or Unreasonableness of the Board's Decision*

The Board's final argument is that the district court erred by concluding that the Board's salary decision was arbitrary, capricious, and unreasonable. We review the Board's decision independently without giving any deference to the trial court's conclusions. *In re 1984 Pine Cnty. Attorney Budget*, 366 N.W.2d 708, 710 (Minn. App. 1985).

A county attorney has the statutory right to challenge the salary or budget decisions of a county board on the grounds that the board unreasonably ignored the duties and responsibilities of the county attorney or assistant county attorneys. *See Amdahl*, 258 N.W.2d at 876. We will dismiss a county attorney's appeal if no evidence is presented indicating why the challenged budget impairs the county attorney's ability to perform the duties of the office. *See id.* at 877 (dismissing a challenge where officials gave no facts to support their conclusory assertions that their budgets were inadequate). But it is sufficient for a county attorney to appeal a budget decision on the ground that the budget arbitrarily underpays assistant county attorneys, provided there is evidence to support that position. *See Crow Wing Cnty. Attorney*, 552 N.W.2d at 281 (analyzing the merits of a budget appeal based on similar facts).

The Board must "demonstrate more than a cursory familiarity with the duties and responsibilities" of the position before we will accept its decision as reasonable. *Stensland*, 365 N.W.2d at 228. A blanket raise that does not specifically consider the

duties and responsibilities of assistant county attorneys is not reasonable. *In re Mille Lacs Cnty. Attorney*, 422 N.W.2d at 294-95. Comparisons among counties that are similarly situated are relevant when considering the duties and responsibilities of the job. *In re 1984 Pine Cnty. Attorney*, 366 N.W.2d at 711. A county board is not unreasonable simply because it considers the impact of proposed salary increases on county tax limits. *Opheim v. Cnty. of Norman*, 784 N.W.2d 90, 99 (Minn. App. 2010). But when such salaries are significantly lower than those in comparable counties, it is unreasonable to retain those salaries merely because a county board wishes to keep raises proportional for all county employees and to avoid raising taxes. *In re 1984 Pine Cnty. Attorney*, 366 N.W.2d at 711. The same statutory considerations apply to decisions affecting the salaries of assistant county attorneys. *See, e.g.*, *Opheim*, 784 N.W.2d at 98-99; *In re Mille Lacs Cnty. Attorney*, 422 N.W.2d at 294-95.

The Board argues that the district court erred when it concluded that the Board's salary decision was arbitrary and capricious, asserting that the counties it selected for comparison were appropriate and that the commissioners adequately considered the duties and responsibilities of the job. The parties strenuously disputed which counties were similarly situated to Blue Earth County. The Board urged that the surrounding Region 9 counties (so-called because the state groups them together for purposes of economic analysis), as well as the City of Mankato, provide the best comparison, and noted that it had used these counties for comparisons in the past. The commissioners conceded that the Region 9 counties are all smaller than Blue Earth County (most less than 1/3 as populous) and have substantially lower crime figures. These counties also

7

have smaller county attorney's offices, and at least one commissioner testified that it was difficult to make comparisons with these smaller offices, which often rely on part-time attorneys.

Arneson, on the other hand, contended that other counties, such as regional centers and outer-ring counties in the Twin Cities metro area, were more appropriate, because of their larger population, more analogous crime statistics and assistant county attorney employment data, and similar workloads, than the Region 9 counties. Arneson presented this information to the commissioners, all of whom testified that they felt comfortable relying instead on the data from the Region 9 counties because they historically had done so. This supports the district court's conclusion that the Board failed to consider responsibilities and duties of the assistant county attorneys.

The Board gave substantial weight to its consultant's classification of the assistant county attorney position according to a system that primarily emphasizes decision-making responsibilities. The record suggests that the Board gave at least some consideration to appropriate factors, including caseload statistics and job descriptions of the various assistant county attorney positions, and several commissioners acknowledged their familiarity with the role of assistant county attorneys from previous work experience. But the Board concluded that caseload statistics proved that no additional employees were necessary yet failed to consider whether the increased workload may merit a raise. Further, the Board's anecdotal testimony suggested that it did not have a clear understanding of the full scope of the duties and responsibilities of an assistant county attorney. Consequently, we conclude that the Board acted arbitrarily and

8

unreasonably by deciding the assistant county attorneys' salaries with reference to counties that are not similarly situated to Blue Earth County, ignoring more suitable comparative data when Arneson provided it, and not focusing on the performance, experience, and responsibilities of the assistant county attorneys.

**Affirmed.**